ORIGINAL

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA D. SHYMKO and AKHIL CHOPRA, Individually and on Behalf of a Class of Persons Similarly Situated, | : : : | |
| Plaintiffs, | : : | **Case No.** |
| -against- | : : : | |
| AON CORPORATION, PATRICK RYAN, MICHAEL O'HALLERAN, DAVID BOLGER, THOMAS STACHURA, JOHN RESCHKE, NANCY GROSS, ROBERT HURWITZ, LESTER B. KNIGHT, EDGAR D. JANNOTTA, JAN KALFF, J. MICHAEL LOSH, R. EDEN MARTIN, RICHARD C. NOTEBAERT, and JOHN W. ROGERS, JR., | : : : : : : : : : : | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITIES ACT** |
| Defendants. | : | |

Plaintiffs, Angela D. Shymko and Akhil Chopra, on behalf of themselves and all other persons similarly situated (the "Participants"), and on behalf of the Aon Corporation ("Aon" or the "Company") 401K Savings Plan (the "Plan"), by their attorneys, allege the following:

## I. NATURE OF ACTION

1.      This is a civil enforcement action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132.

2.      The lawsuit concerns the Plan, a retirement plan established by the Aon Corporation as a benefit for its employees to permit tax-advantaged savings for retirement and other long-term goals. The Plan is a defined contribution plan covering most of Aon's full and part-time employees.

1-1

3. Plaintiffs sue Patrick Ryan, Michael O'Halleran, David Bolger, Thomas Stachura, John Reschke, Nancy Gross, Robert Hurwitz, Lester B. Knight, Edgar D. Jannotta, Jan Kalff, J. Michael Losh, R. Eden Martin, Richard C. Notebaert, and John W. Rogers, Jr., who are the administrators and directors of the Plan and the directors and/or officers of the Company; and the Company.

4. Plaintiff, Angela D. Shymko, is a former employee of Aon Consulting Inc., and a participant in the Plan. Plaintiff, Akhil Chopra, is a former employee of Aon Corporation and a participant in the plan. Plaintiffs allege that defendants, Aon itself and certain individuals, are fiduciaries of the Plan, and breached their fiduciary duties to her and to the other participants and beneficiaries of the Plan, in violation of ERISA § 409, 29 U.S.C. §1109, in connection with the Plan's holdings of Aon stock. Plaintiffs allege that defendants are obliged under ERISA to make the Plan whole for the losses suffered as a result of defendants' failure to discharge their fiduciary obligations.

5. Because plaintiffs' claims apply to the participants and beneficiaries as a whole, and because ERISA authorizes a participant to sue for plan-wide relief for breaches of fiduciary duty, they bring this action on behalf of themselves and all the participants and beneficiaries of the Plan during the relevant period.

## II.  JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and ERISA §502(e)(l), 29 U.S.C.  §1132(e)(l), and personal jurisdiction over defendants pursuant to Fed. R. Civ. P. 4(k).

7.     Venue is proper in this district pursuant to ERISA §502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and defendant Aon maintains its corporate headquarters in this District.

### III.  PARTIES

**Plaintiffs**

8.     Plaintiff, Angela D. Shymko, is a former employee of Aon Consulting Inc. who, through numerous employee contributions and employer contributions, purchased securities of Aon Corporation from November 1, 1998 through the present (the "Class Period").

9.     Plaintiff, Akhil Chopra, is a former employee of Aon Corporation who, through numerous employee contributions and employer contributions, purchased securities of Aon Corporation during the Class Period.

10.     Plaintiffs "participants" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7)). During the Class Period, plaintiffs' interest in the Plan was invested in Aon common stock.

**Defendants**

11.     Defendant Aon is a Delaware corporation with its principal place of business located at 200 E. Randolph Street, Chicago, Illinois 60601. The Company, through its various subsidiaries worldwide, serves its clients through three operating segments: Risk and Insurance Brokerage Services, which acts as an advisor and insurance broker, helping clients manage their risks and negotiates and places insurance risk with insurance carriers through its global distribution network; Consulting, which provides advice and services to clients for employee benefits, compensation, management consulting, communications and human resources outsourcing; and Insurance

Underwriting, which provides specialty insurance products, including supplemental accident, health and life insurance; credit life, accident and health insurance; extended warranty products, and select property and casualty insurance products and services.

12.     Defendant Patrick Ryan ("Ryan") was at all times relevant hereto Chairman and Chief Executive Officer of Aon. Upon information and belief, Ryan was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Ryan participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

13.     Defendant Michael O'Halleran ("O'Halleran") was at all times relevant hereto, Senior Executive Vice President. Upon information and belief, O'Halleran was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. O'Halleran participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

14.     Defendant David Bolger ("Bolger") joined Aon in early 2003 as Executive Vice President for Finance and Administration, and assumed the role of Chief Financial Officer in April 2003. Upon information and belief, Bolger was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Bolger participated in

4

communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

15.      Defendant Thomas Stachura ("Stachura") was at all times relevant hereto, an Administrator of the Plan and served as a member of the Aon Savings Plan Committee. Upon information and belief, Stachura was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Stachura participated in communications to Plan Participants, including, for example, by execution of the Company's Annual Statement on Form 11-K relating to the Financial Statement of the Plan.

16.      Defendant John Reschke ("Reschke") was at all times relevant hereto, an Administrator of the Plan and served as a member of the Aon Savings Plan Committee. Upon information and belief, Reschke was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Reschke participated in communications to Plan Participants, including, for example, by execution of the Company's Annual Statement on Form 11-K relating to the Financial Statement of the Plan.

17.      Defendant Nancy Gross ("Gross") was at all times relevant hereto, an Administrator of the Plan and served as a member of the Aon Savings Plan Committee. Upon information and belief, Gross was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Gross participated in communications to Plan

Participants, including, for example, by execution of the Company's Annual Statement on Form 11-K relating to the Financial Statement of the Plan.

18. Defendant Robert Hurwitz ("Hurwitz") was at all times relevant hereto, an Administrator of the Plan and served as a member of the Aon Savings Plan Committee. Upon information and belief, Hurwitz was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Hurwitz participated in communications to Plan Participants, including, for example, by execution of the Company's Annual Statement on Form 11-K relating to the Financial Statement of the Plan.

19. Defendant Lester B. Knight ("Knight") was at all times relevant hereto, a Director and Chairman of the Investment Committee of the Company's Board of Directors. Upon information and belief, Knight was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Knight participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

20. Defendant Edgar D. Jannotta ("Jannotta") was at all times relevant hereto a Director and member of the Investment Committee of the Company's Board of Directors. Upon information and belief, Jannotta was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Jannotta participated in communications to Plan

6

Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

21.     Defendant Jan Kalff ("Kalff") was at all times relevant hereto, a Director and member of the Investment Committee of the Company's Board of Directors. Upon information and belief, Kalff was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Kalff participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

22.     Defendant J. Michael Losh ("Losh") was at all times relevant hereto, a Director and member of the Investment Committee of the Company's Board of Directors. Upon information and belief, Losh was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Losh participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

23.     Defendant R. Eden Martin ("Martin") was at all times relevant hereto, a Director and member of the Investment Committee of the Company's Board of Directors. Upon information and belief, Martin was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Martin participated in communications to Plan

7

Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

24.     Defendant Richard B. Notebaert ("Notebaert") was at all times relevant hereto, President, Chief Operating Officer, a Director, member of the Investment Committee and Chairman of the Compensation Committee of the Company's Board of Directors. Upon information and belief, Notebaert was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Notebaert participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

25.     Defendant John W. Rogers, Jr. ("Rogers") was at all times relevant hereto, a Director and Chairman of the Audit Committee of the Company's Board of Directors. Upon information and belief, Rogers was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Rogers participated in communications to Plan Participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Aon stock to be issued to Plan Participants.

26.     The defendants referred to in paragraphs 11-24 are collectively referred to herein as the "Individual Defendants."

27.     Because of the Individual Defendants' positions with the Company, they had access to adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets, and present and future business prospects via access to internal

8

corporate documents (including the Company's operating plan, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof, and via reports and other information provided to them in connection therewith.

## IV. <u>APPROPRIATENESS OF CLASS ACTION</u>

28.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and on behalf of a class (the "Class") of all persons similarly situated. The Class itself consists of all persons who were participants in or beneficiaries of the Plan at any time from November 1, 1998 through the present. Excluded from the Class are defendants, directors of the Company, at time relevant hereto, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

29.    Plaintiff meets the prerequisites to bring this action on behalf of the Class because:

(a)    **Numerosity** -  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes the Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable. Plan Participants and beneficiaries may be identified from records maintained by the Company or the Plan's trustee and may be notified of the pendency of this action by mail.

9

(b)     **Commonality** - There are questions of law and fact common to the Class such as:

        i.      Did defendants breach their fiduciary duties owed to Plan Participants and beneficiaries?

        ii.     Did defendants' communications to participants provide complete and accurate information concerning the risks of investing in Company stock?

        iii.    Did defendants provide false and misleading information, or fail to disclose material information, concerning the financial health of the Company?

        iv.    What steps, if any, did defendants take to investigate and monitor whether it was appropriate to continue to offer Company stock as a retirement vehicle for Plan Participants?

        v.     Did defendants take adequate steps to protect the Plan and recover Plan damages?

(c)     **Typicality** - Plaintiffs' claims are typical of the claims of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein and defendants' breach of fiduciary duty.

(d)     **Adequacy -** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interest of the Class as a whole, and have engaged competent counsel,

highly experienced in ERISA class actions concerning employer securities in 401 (k) plans, as well as in other class and complex litigation, to ensure protection of the interests of the Class as a whole.

30. As an ERISA breach of fiduciary duty action for plan-wide relief, this is a classic Rule 23(b)(l)(B) class action. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. However, this action is also maintainable as a class action under the other subsections (b) of Rule 23:

(a)     **Rule 23(b)(l)(A).** The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendants.

(b)     **Rule 23(b)(2).** The defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

(c)     **Rule 23(b)(3).** Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

11

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them and there will be no difficulty in the management of this action as a class action.

31.     There are one or more putative or certified class action securities cases pending against Aon and other defendants. The claims herein are under ERISA and related principles of federal common law and are not being asserted by the plaintiffs in those other class actions. The named plaintiffs in those class actions do not adequately represent the plaintiffs or the Class herein with respect to ERISA claims and may be subject to defenses and limitations of liability under the PSLRA and other statutes and Rules that do not apply to the claims asserted herein.

32.     Under and required by ERISA, defendants carry insurance for claims asserted herein that may not be available to the defendants in the securities class actions.

33.     The Class contains persons who made purchases within the time frame implicated in the securities class actions, as well as persons who made no purchases within the Class Period for the securities actions, and persons who purchased both within and outside the securities class action time frame.

34.     There are people in this Class who are not members of the classes or putative classes in the securities class action cases.

35.     There are defendants in this case who are not defendants in the securities class actions.

12

## V. **THE PLAN**

36.     By information and belief, the Plan is an "employee pension benefit plan" within the meaning of ERISA §3(2)(A), 29 U.S.C. §1002(2)(A). Further, it is an "eligible individual account plan" within the meaning of ERISA §407(d)(3), 29 U.S.C. § 1107(d)(3), and also a "qualified cash or deferred arrangement" within the meaning of I.R.C. §401 (k), 26 U.S.C. §401(k). The Plan is not a party to this action. Pursuant to ERISA, however, the relief requested in this action is for the benefit of the Plan.

37.     Aon is the sponsor and administrator of the Plan. Its Sponsor Identification Number is 36-3051915 and the Plan Number is 020.

38.     Subject to Internal Revenue Service limitations, participants of the Plan were permitted to contribute before and after tax payroll deductions to the Plan. Participants directed the investment of their contributions to various investment options available in the Plan.

39.     Most of these options were diversified mutual funds. However, the options also included the Aon Stock Fund. Contributions to the ESOP portion of the Plan were automatically invested in common stock of the Company.

40.     The Company matched the participants' contributions, at certain specified percentages, by making contributions to the participants' accounts in the Aon Stock Fund.

## VI.  **DEFENDANTS' FIDUCIARY STATUS**

41.     During the Class Period, the defendants had discretionary authority respecting management of the Plan and/or the management or disposition of the Plan's assets and had discretionary authority or responsibility for the administration of the Plan.

42.     During the Class Period, all of the defendants acted as fiduciaries of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) and the law interpreting that section.

43.     ERISA requires every plan to provide for one or more named fiduciaries, who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(l), 29 U.S.C. § 1102(a)(l). Instead of delegating fiduciary responsibility for the Plan to external service providers, the Company chose to comply with the requirement of section 402(a)(l) by internalizing the fiduciary function. It did so in various ways.

44.     First, during the Class Period, the Company designated the Aon Savings Plan Committee [with oversight by the Investment Committee of the Board of Directors] as Plan Administrator, thereby making the members of that committee named fiduciaries of the Plan.

45.     Second, ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under Section 402(a)(l), but also any other persons who act in fact as fiduciaries, i.e., perform fiduciary functions. ERISA § 3(21)(A)(i) (29 U.S.C. § 1002(2l)(A)(i)) makes a person a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets. . . ." During the Class Period, the defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA, by, among other things, appointing Plan administrators and making statements to participants with respect to the Company, its financial results and business prospects.

46.     Further, Aon and the Individual Defendants performed fiduciary functions by communicating with Plan Participants with respect to the Plan, including, without limitation, through

14

Aon's Form S-8 Registration Statements, the Plan Prospectus, and Aon's periodic SEC reports incorporated by reference to the Form S-8 Registration Statements and the Plan Prospectus.

47.　　In addition under ERISA, in various circumstances non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable. To the extent any of the defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the fiduciary breaches described below.

## VII.　FACTUAL BACKGROUND TO BREACHES OF FIDUCIARY DUTY

48.　　Aon's fast-paced growth began in 1982 when the Ryan Insurance Group merged with Combined International Corporation. Throughout the 1980s and 1990s, strategic acquisitions and organic growth fueled Aon's expansion in the global insurance marketplace. According to the Company's website, Aon is the world's largest reinsurance broker; largest captive insurance company manager; second largest insurance brokerage; and third largest employee benefits consultant.

49.　　During the Class Period, Aon operated in more than 120 countries with over 51,000 employees in more than 600 offices. In retaining existing employees and in recruiting prospective employees, Aon told employees that they would be expected to work hard but that they would be well- rewarded for their efforts.

50.　　During the Class Period, Aon touted itself as experiencing outstanding, sustainable growth, and as continuing to demonstrate positive results. However, during the Class Period, Aon engaged in a plan whereby Aon steered business toward companies, and shielded such companies from competition, in exchange for so-called "contingent commissions." This arrangement created

improper incentives for Aon to steer business towards those businesses who were, in effect, providing kickbacks to Aon.

51.    In reality, Aon knew that its growth prospects were quite different from its past record and from what it was publicly indicating. Specifically, the Company inflated its earnings during the Class Period by utilizing an unsustainable business practice whereby the Company designed and executed a business plan under which insurance companies agreed to pay "contingent commissions" in return for Aon to steer them business and shield them from competition. During the Class Period, Aon took in untold millions of dollars from these improper activities.

52.    Moreover, Aon entered into a campaign of bid-rigging, whereby the Company held purportedly competitive insurance solicitations, made on behalf of clients, to insure that companies involved in Aon's illicit commission scheme were able to obtain insurance and services contracts at inflated prices. To carry out this scheme, Aon presented clients with fictitious high quotes from insurance companies to create the appearance that fair bidding amongst insurance providers was occurring. In reality, this assured that Aon could execute insurance contracts at rates that they would otherwise be unable to obtain in a freely-competitive market.

53.    On October 14, 2004, the Attorney General of the State of New York, Eliot Spitzer, announced that as a result of an intensive investigation, the Office of New York State Attorney General had commenced a civil action in relation to the alleged conduct set forth herein. Moreover, Attorney General Spitzer announced that two executives at American International Group, Inc. ("AIG") had pleaded guilty to criminal charges arising out of the scheme. The press release announcing the initiation of the action, stated, as follows:

## INVESTIGATION REVEALS WIDESPREAD CORRUPTION IN INSURANCE INDUSTRY

Leading Brokerage Firm Sued for Fraud and Antitrust Violations; Insurance Company Executives Plead Guilty; Major Insurance Firms Implicated

Attorney General Eliot Spitzer today sued the nation's leading insurance brokerage firm, alleging that it steered unsuspecting clients to insurers with whom it had lucrative payoff agreements, and that the firm solicited rigged bids for insurance contracts.

Simultaneously, Spitzer announced that two insurance company executives have pleaded guilty to criminal charges in connection with the scheme.

The actions against the brokerage firm, Marsh & McLennan Companies, and the two executives stem from a widening investigation of fraud and anti-competitive practices in the insurance industry. Evidence revealed in today's lawsuit also implicates other major insurance carriers.

"The insurance industry needs to take a long, hard look at itself," Spitzer said. "If the practices identified in our suit are as widespread as they appear to be, then the industry's fundamental business model needs major corrective action and reform."

"There is simply no responsible argument for a system that rigs bids, stifles competition and cheats customers," he added.

Spitzer was joined at news conference announcing the actions by New York State Insurance Superintendent Gregory V. Serio, who said: "This has gone from an inquiry into failure to disclose compensation to an active investigation of bid rigging and improper steering. This certainly proves the adage that where there is smoke, there is fire."

The civil complaint filed today in State Supreme Court in Manhattan alleges that for years Marsh & McLennan received special payments from insurance companies that were above and beyond normal sales commissions. These payments -- known as "contingent commissions" — were characterized as compensation for "market services" but were, in fact, rewards for the business that Marsh & McLennan and

17

its independent brokers steered and allocated to the insurance companies. Industry representatives defend this long-standing practice as acceptable and even beneficial to clients, but the Attorney General's office has uncovered extensive evidence showing that it distorts and corrupts the insurance marketplace and cheats insurance customers.

In addition to steering business to its insurance company partners, Marsh, at times, solicited fake bids, which deceived its customers into thinking that true competition had taken place. Marsh & McLennan did this even as it claimed in public statements that its "guiding principle" was to always consider its client's best interests.

Spitzer's complaint against the company cites internal communications in which executives openly discuss actions that were aimed at maximizing Marsh & McLennan's revenue and insurance companies' revenues - without regard to clients' interests. For example, one senior Marsh & McLennan executive sent a message to colleagues saying: "We need to place our business in 2004 with those [insurance companies] that have superior financials, broad coverage and pay us the most."

Another executive noted that the size of contingent commissions will determine "who [we] are steering business to and who we are steering business from."

\* \* \*

The two executives pleaded guilty to participating in the illegal conduct and are expected to testify in future cases.

According to the complaint, Marsh & McLennan collected approximately $800 million in contingent commissions in 2003. Spitzer's civil complaint seeks an end to the steering and bid rigging, disgorgement of improper payments, restitution and punitive damages.

54.     On October 19, 2004, Bloomberg issued an article entitled "Spitzer's Aon Probe

Focuses on Reinsurance Business, WSJ Says." The article stated in part:

New York State Attorney General Eliot Spitzer's probe of Aon Corp., the world's second-biggest insurance broker, spotlights the industry

18

practice of insurance companies buying insurance policies, the Wall Street Journal said in its "Tracking the Numbers" column.

Spitzer's office is investigating whether the Chicago-based company directed business to insurance companies in return for so-called reinsurance business for itself, the paper said, citing people familiar with the matter. The reinsurance business, or insurance policies for insurance companies, is the focus of the probe, because Spitzer suspects Aon's insurance-buying clients may not have received the best deal, the paper said.

Last week, Aon said that soliciting fake price quotations, bid rigging and accepting payments from insurers for not shopping the business around "would violate Aon policies," and it believes its employees have not done so, the Journal said.

55.    On these revelations, the Company's shares fell to $19.20 from $21.27, a drop of 9%, and more than a 57% drop from its Class Period trading high of $44.80.

56.    On October 22, 2004, after the close of the trading day, Aon issued a press release announcing that it would no longer collect "contingent commissions." The press release stated:

**Aon Eliminates Contingent Commissions**
**CEO Calls for New Approach**
Aon Corporation (NYSE:AOC - News) today announced that it is eliminating its practice of accepting contingent commissions from underwriters.

Patrick G. Ryan, chairman and CEO, said, "Because trust and client satisfaction are top priorities for all of us at Aon, we are discontinuing a practice that has created enormous controversy and confusion. We cannot permit even the slightest impression of a conflict between acceptance of these commissions and our paramount obligations to our clients."

Contingent commissions are non-service-specific, volume- or profit-based compensation arrangements. The practice of contingent commissions developed over several decades as a means of compensating insurance intermediaries for services provided on behalf of insurers.

19

The company said that it will provide more detail on contingent commissions and other compensation for services to underwriters in its upcoming third quarter earnings release and conference call. Earnings will be released after the market close on Thursday, October 28, with a conference call scheduled for 10 a.m. central time on Friday, October 29. The webcast can be accessed at wvyw.aon.com.

Mr. Ryan added, "We will work closely with insurance carriers, regulators and other constituencies to establish a new business model that ensures appropriate linkage of compensation to specific, measurable services in a way that is transparent, accepted and understood by our clients. We provide important services on behalf of underwriters; however, certain current compensation models must change."

Aon has begun winding down contingent commission agreements and expects to complete the process by the end of 2004.

57.    During the Class Period, Plan fiduciaries knew or should have known, that the Company was paying illegal and concealed "contingent commissions" pursuant to illegal "contingent commission agreements" that violated applicable principles of fiduciary law, subjecting the Company to enormous fines and penalties totaling potentially tens - if not hundreds - of millions of dollars.

58.    Plan fiduciaries knew, or should have known, that this business practice was unsustainable and that during the Class Period, the value of the Company's stock was based on financial results dependent on these unsustainable business practices.

59.    In short, by no later than the beginning of the Class Period, Aon and the Individual Defendants knew, or should have known, that Aon's stock was a highly inappropriate investment for a long-term retirement savings plan such as the Plan because of the scheme described above and other questionable business practices. Despite this knowledge, defendants continued to offer Aon's stock as a Plan investment alternative, continued to cause Aon matching contributions to be invested

in Aon stock, and failed to impute their full knowledge of the Company's operations on Plan Participants so that the Plan Participants could make an informed decision concerning their Plan investments in Company stock.

## VIII. CLAIMS FOR RELIEF

60.     ERISA § 404(a)(1)(A) (29 U.S.C. § 1104(a)(1)(A)) imposes on a plan fiduciary a duty of loyalty - that is, a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of... providing benefits to participants and its beneficiaries. . . ." Section 404(a)(1)(B) (29 U.S.C. § 1104(a)(1)(B)) also imposes on a plan fiduciary a duty of prudence - that is, a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims...."

61.     A plan fiduciary's duties of loyalty and prudence includes a duty to disclose and inform. This duty entails: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. This duty to disclose and inform recognizes the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the participants and beneficiaries, on the other. In a plan with various funds available for investment, this duty to inform and disclose also includes: (1) the duty to impart to plan participants material information of which the fiduciary has or should have knowledge that is sufficient to apprise the average plan participant

21

of the risks associated with investing in any particular fund; and (2) the duty not to make material misrepresentations.

62.     By no later than the commencement of the Class Period, defendants breached their fiduciary duties to disclose and inform with respect to the Plan's use of employer stock as a plan investment. During the Class Period, and before, any investment in employer stock in the Plan was an undiversified investment in a single company's stock. As a result, any such investment carried with it an inherently high degree of risk. These inherent risks made defendants' duty to provide complete and accurate information about investing in company stock even more important than would otherwise be the case. Rather than providing complete and accurate information to the Plan's participants and beneficiaries regarding the risks of investing in company stock in the Plan, defendants did the opposite: they withheld and concealed material information during the Class Period and before, and instead actively misled the participants and beneficiaries of the Plan about the appropriateness of investing in company stock and about defendants' earnings prospects and business condition, thereby encouraging participants and beneficiaries of the Plan to continue to make and to maintain substantial investments in company stock in the Plan.

63.     A fiduciary's duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of all the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan. Defendants breached this duty of investigation and monitoring with respect to company stock. By no later than the beginning of the Class Period, defendants could not have reasonably made a determination that company stock was a suitable investment for the Plan, either

for a participant's discretionary account or for the match. In fact, by the beginning of the Class Period, if not before, company stock was plainly an unsuitable investment option for the Plan.

64.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

65.     Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occur by continuing to allow company stock as a Plan investment during the Class Period, by failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in company stock and the information provided to participants and beneficiaries concerning it, and, generally, by failing to take whatever steps were necessary to ensure that the fiduciary of the Plan did not suffer from a conflict of interest.

66.     A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents.  While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary, including a plan sponsor-fiduciary, may not blindly follow the plan document if to do so leads to an imprudent result. ERISA § 404(a)(l)(d) (29 U.S.C.§1104(a)(l)(D)).

67.     To the extent that defendants followed the direction of the Plan documents, for example, in continuing to place the match in company stock during the Class Period, beginning no later than the matches of November 1, 1998, they further breached their fiduciary duties.

23

## IX. CAUSATION

68. The Plan suffered a loss, and plaintiffs and the other Class members were damaged, because substantial assets in the Plan were invested in company stock during the Class Period in violation of defendants' fiduciary duties.

69. As fiduciaries, defendants were responsible for the prudence of investments in the Plan during the Class Period unless participants in the Plan themselves exercised effective and informed control over the assets in the Plan in its individual accounts pursuant to ERISA § 404(c) and the regulations promulgated under it. Those provisions were not complied with here; instead of taking the necessary steps to ensure effective participant control by complete and accurate disclosure and regulatory compliance, defendants did exactly the opposite. As a consequence, participants in the Plan did not control the Plan assets that were invested in company stock, and defendants remained entirely responsible for ensuring that such investments were and remained prudent. Defendants' liability to the Plan for damages stemming from imprudent Plan investments in company stock is therefore established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period, without regard to whether or not the participants relied upon defendants' statements, acts, or omissions.

70. The Plan also suffered a loss, and plaintiff and the other Class members were damaged, by defendants' above-described conduct during the Class Period and before, because defendants' materially deceptive statements, acts, and omissions were fundamentally designed to deceive plaintiff and the other Class members about the prudence of making and maintaining investments in company stock. Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable participant that results in

24

harm to the participant, the participant is presumed as a mater of law to have relied upon such misrepresentations and omissions to his or her detriment. Here, defendants' above-described statements, acts, and omissions constituted misrepresentations and omissions that were fundamentally deceptive concerning the prudence of investments in company stock and were material to any reasonable person's decision about whether or not to invest or maintain any part of its plan assets in company stock during the Class Period. Plaintiffs and the other Class members are therefore presumed to have relied to their detriment on defendants' deceptive statements, acts, and omissions.

71.     Plaintiffs further contend that the Plan suffered losses, and plaintiffs and the other Class members were damaged, by defendants' above-described conduct during the Class Period and before, because that conduct fundamentally deceived plaintiff and the other Class members about the prudence of making and maintaining investments in company stock, and that, in making and maintaining investments in company stock, plaintiff and the other Class members relied to their detriment upon defendants' materially deceptive statements, acts, and omissions.

## X. <u>REMEDY FOR BREACHES OF FIDUCIARY DUTY</u>

72.     ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)) authorizes a plan participant to bring a civil action for appropriate relief under section 409 (29 U.S.C. § 1109). Section 409 requires "any person who is a fiduciary ... who breaches any of the... duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate...."

73.     With respect to the calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the

plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the plan's assets to what they would have been if the plan had been properly administered.

74.     Plaintiffs and the Class are therefore entitled to relief from defendants in the form of:

(a)     a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA § 409(a), 29 U.S.C. § 1109(a);

(b)     injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2)&(3), 29 .S.C. §§ 1109(a)  and 1132(a)(2)&(3);

(c)     reasonable attorney fees and expenses as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law;

(d)     taxable costs; and

(e)     interest on some or all of these amounts as provided by law.

## XI. **REQUEST FOR RELIEF**

Based on the foregoing, plaintiffs, on their own behalf and on behalf of the other members of the above-described Class, respectfully requests that this Court enter judgment on her behalf and against defendants for a monetary payment to the Plan, injunctive and other appropriate

equitable relief, reasonable attorney fees and expenses, taxable costs, interest, and any other relief the Court deems just.

Dated:  January 3, 2005

                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLC**

By: _____
                   Mary Jane Edelstein Fait
                   Adam J. Levitt
                   656 West Randolph, Suite 500W
                   Chicago, Illinois  60661
                   (312) 466-9200 (t)
                   (312) 466-9292 (f)

                   Daniel W. Krasner
                   Fred Taylor Isquith
                   Mark C. Rifkin
                   Gustavo Bruckner
                   **WOLF HALDENSTEIN ADLER**
                     **FREEMAN & HERZ LLP**
                   270 Madison Avenue
                   New York, New York  10016
                   (212) 545-4600 (t)
                   (212) 545-4563 (f)

                   Bennett D. Cin
                   **CIN & WAGNER**
                   55 West Monroe Street, Suite 2410
                   Chicago, Illinois  60603
                   (312) 759-8787 (t)
                   (312) 759-0021 (f)

                   Aaron Patton
                   Jacqueline Sailer
                   Eric Belfi
                   **MURRAY, FRANK & SAILER LLP**
                   275 Madison Avenue, Suite 801
                   New York, New York 10016
                   (212) 682-1818 (t)
                   (212) 682-1892 (f)

Bruce G. Murphy
**LAW OFFICES OF BRUCE G.
 MURPHY**
265 Llwyds Lane
Vero Beach, Florida 32963
(772) 231-4202 (t)
(772) 234-0440 (f)

***Attorneys for Plaintiffs***

6898

28

Civil Cover Sheet                                                                 Page 1 of 1

FILED-EDA
2005 JAN -3 PM 3:51
CLERK
DISTRICT COURT

ORIG

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff(s):** In the Matter of ANGELA SHYMKO and AKHIL CHOPRA, Individually, and on Behalf of a Class of Persons Similarly Situated, | **Defendant(s):** AON CORPORATION, et al. |
| County of Residence: Cook | County of Residence: Cook |
| Plaintiff's Atty:    Wolf Haldenstein Adler Adler Freeman & Herz LLC 565 W. Randolph St., Suite 500W Chicago, Illinois 60661 312/656-4600 | Defendant's Atty:    Sidley Austin Brown & Wood 10 S. Dearborn St., 25th Fl Chicago, Illinois 60603 312/853-7000 |

II. Basis of Jurisdiction:      -3: Federal Question (U.S. not a party)

III. Citizenship of Principal Parties (Diversity Cases Only)

         Plaintiff:-N/A

         Defendant:-N/A

**05C 0015**

JUDGE ZAGEL

DOCKETED
JAN 0 4 2005

MAGISTRATE SIDNEY I. SCHENKIER

IV. Origin :          **1. Original Proceeding**

V. Nature of Suit:          **791 E.R.I.S.A**

VI.Cause of Action:          **Breach of Fiduciary duties pursuant to ERISA Section 409, 29 U.S.C. Section 1109 and Section 502, U.S.C. Section 1132**

VII. Requested in Complaint

         Class Action: **Yes**

         Dollar Demand:

         Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: 1/3/05 _____

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.** Revised: 06/28/00

ORIGINAL

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of ANGELA D. SHYMKO and AKHIL CHOPRA, Individually, and on Behalf of a Class of Persons Similarly situated, Plaintiff, vs. AON CORPORATION, *et al.,* Defendants.

Case Number: 05C 0015

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

ANGELA D. SHYMKO and AKHIL CHOPRA, Individually, and
On Behalf of a Class of Persons Similarly situated

JUDGE ZAGEL

MAGISTRATE SIDNEY I. SCHE...

| (A) | | (B) | |
|---|---|---|---|
| SIGNATURE *Mary Jane Edelstein Fait* | | SIGNATURE | |
| NAME Mary Jane Edelstein Fait | | NAME Adam J. Levitt | JAN 0 4 2005 |
| FIRM Wolf Haldenstein Adler Freeman & Herz LLC | | FIRM Wolf Haldenstein Adler Freeman & Herz LLC | |
| STREET ADDRESS 656 W. Randolph Street, Suite 500W | | STREET ADDRESS 656 W. Randolph, Suite 500W | |
| CITY/STATE/ZIP Chicago, Illinois 60661 | | CITY/STATE/ZIP Chicago, Illinois 60661 | |
| TELEPHONE NUMBER 312/466-9200 | FAX NUMBER 312/466-9292 | TELEPHONE NUMBER 312/466-9200 | FAX NUMBER 312/466-9292 |
| E-MAIL ADDRESS Fait@whafh.com | | E-MAIL ADDRESS Levitt@whafh.com | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06182377 | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06216433 | |
| MEMBER OF TRIAL BAR? YES ✕ NO ☐ | | MEMBER OF TRIAL BAR? YES ☐ NO ✕ | |
| TRIAL ATTORNEY? YES ✕ NO ☐ | | TRIAL ATTORNEY? YES ✕ NO ☐ | |
| | | DESIGNATED AS LOCAL COUNSEL? YES ✕ NO ☐ | |
| (C) | | (D) | |
| SIGNATURE *Daniel W. Krasner* | | SIGNATURE *Fred T. Isquith* | |
| NAME Daniel W. Krasner | | NAME Fred T. Isquith | |
| FIRM Wolf Haldenstein Adler Freeman & Herz LLP | | FIRM Wolf Haldenstein Adler Freeman & Herz LLP | |
| STREET ADDRESS 270 Madison Avenue, Tenth Floor | | STREET ADDRESS 270 Madison Avenue, Tenth Floor | |
| CITY/STATE/ZIP New York, New York 10016 | | CITY/STATE/ZIP New York, New York 10016 | |
| TELEPHONE NUMBER 212/545-4600 | FAX NUMBER 212/545-4653 | TELEPHONE NUMBER 212/545-4600 | FAX NUMBER 212/545-4653 |
| E-MAIL ADDRESS Krasner@whafh.com | | E-MAIL ADDRESS Isquith@whafh.com | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) n/a | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) n/a | |
| MEMBER OF TRIAL BAR? YES ☐ NO ✕ | | MEMBER OF TRIAL BAR? YES ☐ NO ✕ | |
| TRIAL ATTORNEY? YES ✕ NO ☐ | | TRIAL ATTORNEY? YES ☐ NO ☐ | |

1-3

| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ |
|---|---|---|---|---|---|

**(E)** | | | **(F)** | | |

SIGNATURE *Mark C. Rifkin* | | | SIGNATURE *Gustavo Bruckner* | | |

NAME Mark C. Rifkin | | | NAME Gustavo Bruckner | | |

FIRM Wolf Haldenstein Adler Freeman & Herz LLP | | | FIRM Wolf Haldenstein Adler Freeman & Herz LLP | | |

STREET ADDRESS 270 Madison Avenue, Tenth Floor | | | STREET ADDRESS 270 Madison Avenue, Tenth Floor | | |

CITY/STATE/ZIP New York, New York 10016 | | | CITY/STATE/ZIP New York, New York 10016 | | |

TELEPHONE NUMBER 212/545-4600  FAX NUMBER 212/545-4653 | | | TELEPHONE NUMBER 212/545-4600  FAX NUMBER 212/545-4653 | | |

E-MAIL ADDRESS Rifkin@whafh.com | | | E-MAIL ADDRESS Bruckner@whafh.com | | |

IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) n/a | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |

| MEMBER OF TRIAL BAR? | YES ☐ | NO ✗ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
|---|---|---|---|---|---|
| TRIAL ATTORNEY? | YES ✗ | NO ☐ | TRIAL ATTORNEY? | YES ✗ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ✗ | NO ☐ | TRIAL ATTORNEY? | YES ✗ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ |

**(G)** | | | **(H)** | | |

SIGNATURE *Bennett D. Cin* | | | SIGNATURE *Aaron Patton* | | |   JAN 0 4

NAME Bennett D. Cin | | | NAME Aaron Patton | | |

FIRM Cin & Wagner | | | FIRM Murray, Frank & Sailer, LLP | | |

STREET ADDRESS 55 West Monroe Street, Suite 2410 | | | STREET ADDRESS 275 Madison Avenue, Suite 801 | | |

CITY/STATE/ZIP Chicago, Illinois 60603 | | | CITY/STATE/ZIP New York, New York 10016 | | |

TELEPHONE NUMBER 312/759-8787  FAX NUMBER 312/759-0021 | | | TELEPHONE NUMBER 212/682-1818  FAX NUMBER 212/682-1892 | | |

E-MAIL ADDRESS Bennettcin@cinwagner.com | | | E-MAIL ADDRESS | | |

IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6199793 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) n/a | | |

| MEMBER OF TRIAL BAR? | YES ☐ | NO ✗ | MEMBER OF TRIAL BAR? | YES ☐ | NO ✗ |
|---|---|---|---|---|---|
| TRIAL ATTORNEY? | YES ✗ | NO ☐ | TRIAL ATTORNEY? | YES ✗ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ✗ |

| **(I)** | **(J)** |
|---|---|
| SIGNATURE *Eric Belfi* | SIGNATURE *Jacqueline Sailer* |
| NAME  Eric Belfi | NAME  Jacqueline Sailer |
| FIRM  Murray, Frank & Sailer, LLP | FIRM  Murray, Frank & Sailer, LLP |
| STREET ADDRESS  275 Madison Avenue, Suite 801 | STREET ADDRESS  275 Madison Avenue, Suite 801 |
| CITY/STATE/ZIP  New York, New York  10016 | CITY/STATE/ZIP  New York, New York  10016 |
| TELEPHONE NUMBER  212/682-1818   FAX NUMBER  212/682-1892 | TELEPHONE NUMBER  212/682-1818   FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  n/a | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  n/a |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES ☐   NO |
| TRIAL ATTORNEY?   YES ☒   NO ☐ | TRIAL ATTORNEY?   YES ☒   NO |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO |

| **(K)** | |
|---|---|
| SIGNATURE *Bruce G. Murphy* | SIGNATURE |
| NAME  Bruce G. Murphy | NAME |
| FIRM  Law Offices of Bruce G. Murphy | FIRM |
| STREET ADDRESS  265 Llwyds Lane | STREET ADDRESS |
| CITY/STATE/ZIP  Vero Beach, Florida  32963 | CITY/STATE/ZIP |
| TELEPHONE NUMBER  772/231-4202   FAX NUMBER  772/231-0440 | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS  Bennettcin@cinwagner.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6199793 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES   NO |
| TRIAL ATTORNEY?   YES ☒   NO ☐ | TRIAL ATTORNEY?   YES   NO |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ | DESIGNATED AS LOCAL COUNSEL?   YES   NO |

JAN 0 4 2005